IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARRIE J. HALE McCOIN,

              Petitioner,

    v.

MARVIN FICKLE,

              Respondent.

Case Number CV 07-1171-CL

**Report & Recommendation**

CLARKE, Magistrate Judge:

    Petitioner Carrie J. Hale McCoin is in the custody of the Oregon State Hospital. She brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 alleging five grounds for relief under the Sixth Amendment of the United States Constitution. (Second Am. Pet. for Writ of Habeas Corpus (Second Am. Pet.) 3)

    For the reasons set forth below, the petition should be denied and this proceeding should be dismissed.

**I.    Background**

    On June 5, 2003, petitioner was indicted by a grand jury in State v. Carrie Jenae Hale,

Report & Recommendation   1

Lincoln County Circuit Court Case No. 032283, for two counts of Assault in the Second Degree and one count of Burglary in the First Degree. (Resp.'t's Exhibit (Ex.) 102.) Petitioner waived her right to a jury trial. (Ex. 103, Transcript (Tr.) at 6-7.) At her bench trial, she entered a notice of intent to rely upon the defense of mental disease or defect or in the alternative, intent to offer evidence of mental disease or defect relative to issue of intent.[1] (Ex. 119.) This defense was secondary to the primary defense that petitioner was not guilty because she was not the party responsible for the injuries to Angel Ingles. (Ex. 119; Ex. 118, Aff. of Jeffrey C. Hollen, 2.)

At trial, evidence was presented that Petitioner entered the house of Mr. Ingles without his permission on May 30, 2003. She stayed the night and refused to leave. (Tr. 41-43.) Mr. Ingles testified that he sprayed Petitioner with pepper spray in an attempt to force her to leave. According to Mr. Ingles, the Petitioner hit him, first with a piece of wooden railing from a porch, and later with a brass lamp. (Tr. 45-47.) Eventually an individual known only as "El Negro" appeared at the victim's house and took Mr. Ingles to the hospital. (Tr. 66-67.) Petitioner continued to damage the apartment before leaving. (Tr. 183.)

Officers spoke with Mr. Ingles at the hospital about his injuries. (Tr. 76.) Officer Brian Eskridge testified to the court about the nature and severity of Mr. Ingles' injuries. These included lacerations on his head and face and bruising on his face, elbow, hands, arms, and back. (Tr. 76-77.) Officers Eskridge and Moreland and Sergeant McBain found Petitioner wandering outside of Mr. Ingles' apartment building wearing clothing covered in blood. (Tr. 81.) Defense counsel cross-examined Mr. Ingles about the individuals who took him to the hospital,

---

[1] Petitioner asserts in Ground Three of her federal habeas petition that this was entered without her permission. However, the post-conviction court issued its findings of fact to conclude that the evidence does not support her assertion. (Ex. 123.)

Report & Recommendation    2

Petitioner's allegations that Mr. Ingles was a drug dealer, and the level of alcohol that was found in his system when he was admitted at the hospital. (Tr. 66-72.)

In her defense, Petitioner testified that two men assaulted her and Mr. Ingles. (Tr. 173.) This testimony was unsupported and contradicted the testimony of Mr. Ingles' neighbor who heard only a "one-sided fight." (Tr. 22.) Defense counsel also called Deputy Kelly Brown who testified about her visual examination of Petitioner, noting various bruises on her body. (Tr. 93.)

At the conclusion of the trial on May 5, 2004, the court found that Petitioner was guilty except for insanity of the indicted offenses. (Ex. 117, Court Findings on Trial of Carrie Jenea Hale.) The court sentenced her to 20 years under the jurisdiction of the Psychiatric Review Board. (Ex. 101, Judgment/Facesheet.)

Petitioner filed a direct appeal but later sought a dismissal, which was granted. (Ex. 105, Mot. to Dismiss; 106, Order of Dismissal.) Next, Petitioner filed for post-conviction relief on December 5, 2005. She argued that her Sixth Amendment right to effective and adequate assistance of counsel had been violated on three grounds. First, she asserted that at trial her attorney entered a not guilty by reason of insanity defense without receiving her authorization; second, that her attorney failed to use available medical documentation to impeach Mr. Ingles' credibility; and third, that he failed to call as a witness Gus Willemin who "would have testified that petitioner had been beaten on the night she was admitted into the jail for the assault upon the victim." (Ex. 107, Am. Pet. for Post-Conviction Relief, ¶ 4.)

There was a post-conviction trial on April 17, 2006, and Petitioner attended by telephone. On May 8, 2006, the Court issued its opinion finding that "petitioner's trial counsel performed his duties in representing petitioner in a constitutionally adequate manner." (Ex. 122, Post

Report & Recommendation    3

Conviction Relief Court's Letter Denying Relief, 2.)

Petitioner appealed and her appointed counsel filed a brief in accordance with State v. Balfour, 814 P.2d 1069.[2] Section B of Petitioner's brief explains her belief that counsel erred at her trial in not calling Mr. Willemin. She also explained that the post-conviction court was wrong because trial counsel did not call the proper witnesses. She believed Willemin could demonstrate the court's error. (Ex. 125, Appellant's Brief, 34; see Mem. in Supp. of Second Am. Petition 10.) Respondent moved for summary affirmance, which Petitioner did not contest. The Oregon Court of Appeals granted the motion on March 23, 2007. (Ex. 127, Order of Summ. Affirmance.) Petitioner later filed a petition for review with the Oregon Supreme Court, raising her claim for her Sixth Amendment rights. (Ex. 128, Petition for Review.) The Oregon Supreme Court denied review on July 24, 2007, and an appellate judgment was entered on September 10, 2007. (Ex. 129, Order Denying Review; Ex. 130, Appellate Judgment.)

Petitioner filed a pro se petition for a writ of habeas corpus on August 8, 2007. She filed an amended petition through counsel on February 13, 2008. Petitioner alleges five grounds[3] for relief asserting that her convictions were obtained in violation of her Sixth Amendment rights when:

1. Trial counsel failed to provide the court with evidence of Ms. McCoin's physical condition at the time of her arrest, which would have supported her claim of events.

---

[2] Upon concluding that only frivolous issues exist on appeal, a Balfour brief allows appointed counsel to meet the constitutional requirements of "active advocacy" without violating rules of professional conduct. Section A, signed by counsel, contains a statement of the case, including a statement of facts, sufficient to apprise the court of the jurisdictional basis for the appeal, but contains no assignments of error or argument. Section B, signed only by the appellant, is a presentation of the issues that appellant seeks to raise but that counsel considers to be frivolous. Balfour v. State of Oregon, 311 Or. 434, 451-52 (1991).

[3] It appears that only three of the five grounds for relief in the federal habeas petition are the same or at least significantly similar to those raised in state court.

Report & Recommendation  4

> 2. Trial counsel failed to call witnesses to testify on Ms. McCoin's behalf, including but not limited to, Shelli McGinnis, Beverly Johnson, Bill Ross, and Gus Willemin.
> 3. Trial counsel entered a notice of intent to rely on a defense of mental disease or defect under both Or. Rev. Stat. § 161.295 and Or. Rev. Stat. § 161.300 without informing Ms. McCoin and without obtaining her consent.
> 4. Trial counsel failed to fully investigate the forensic evidence at the scene. Such failings include, but are not limited to, failure to obtain an independent expert to test the scene and evidence for fingerprints, failure to obtain an independent expert to test the scene for the presence of additional deposits of Ms. McCoin's blood, failure to have an independent expert evaluate the DNA testing, and failure to have an independent expert conduct defense DNA testing. A full investigation of the forensic evidence would have supported Ms. McCoin's claim of events.
> 5. Trial counsel failed to introduce evidence of Mr. Ingles's criminal record to impeach his veracity and credibility.

(Second Am. Pet. 3.) Petitioner's memorandum in support of her second amended petition addresses only Ground 1, that counsel failed to provide evidence of Petitioner's physical appearance, and part of Ground 2, that counsel failed to call Mr. Willemin as a witness. (Mem. in Supp. of Second Am. Pet. (Mem. in Supp.) 11.)

## II. Legal Standards

### A. Exhaustion

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. See 28 U.S.C.§ 2254(b)(1). Since a federal court may only issue the writ freeing a state prisoner where his imprisonment violates the Constitution, laws, or treaties of the United States, a prisoner whose conviction rests on state-law grounds that are adequate, and independent from any federal claim he may have, is not entitled to the writ. 28 U.S.C. § 2254(a); Wainwright v. Stykes, 433 U.S. 72, 87-88 (1977)(habeas corpus relief not available to a state prisoner who is

Report & Recommendation    5

in state custody on "adequate and independent" state law grounds).

A state prisoner must fairly present her federal claims to the state courts, including the state's highest court, before a federal court can consider granting habeas corpus relief. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 911 (9th Cir.2004); O'Sullivan v. Boerekel, 526 U.S. 838 (1999). The exhaustion doctrine is intended "to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518 (1982). Thus, state courts must be afforded a meaningful opportunity to consider and correct any legal violations before federal courts intervene. Duncan v. Henry, 513 U.S. 364, 365 (1995).

A fair presentation requires a prisoner to state the facts that entitle him to relief, and to reference the federal source of law on which he relies or a case analyzing the federal constitutional guarantee on which he relies or to simply label his claim "federal." Baldwin, 541 U.S. at 32; Gray v. Netherland, 518 U.S. 152, 162-63 (1996). Failure to do so will result in a prisoner's claim being unexhausted, even if all the facts necessary to support the federal claim were available to the state courts, or somewhat similar claims were made. Anderson v. Harless, 459 U.S. 4, 6 (1982). The state appellate courts are "not required to comb the trial court's decision to discover" the federal issue(s). Castillo v. McFadden, 370 F.3d 882, 887 (9th Cir.2004). Thus, if the prisoner has never given the state courts an opportunity to consider his federal claims, generally federal courts will not consider them either. 28 U.S.C. § 2254(c).

### B.  Procedural Default

Even if a prisoner has given the state courts an opportunity to consider his federal claims, if a procedural rule barred the state courts from considering the merits of the claims when they

Report & Recommendation   6

were presented, generally federal courts will not consider them either because the claims are now procedurally defaulted. Franklin v. Johnson, 290 F.3d 1223 (9th Cir.), cert. denied, 541 U.S. 1037 (2004); Castille v. Peoples, 489 U.S. 346, 351-52 (1989)(claim not fairly presented when raised for the first time on petition for review to state Supreme Court).

When a habeas petitioner fails to raise a federal claim in state court in a procedural context in which its merits will be considered, the claim is procedurally defaulted and federal habeas review is barred unless the petitioner can demonstrate "cause" and "actual prejudice," or that failure to consider the claims will result in a "fundamental miscarriage of justice." Sawyer v. Whitley, 505 U.S. 333, 338 (1992); Noltie v. Peterson, 9 F.3d 802, 804-05 (9th Cir.1993).

To show "cause" a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Trial counsel's failure to recognize the factual or legal basis of the claim does not qualify as "cause." Id. at 486. Moreover, since the United States Constitution does not afford prisoners the right to appellate counsel (unless they have been sentenced to capital punishment), appellate counsel's failure to provide effective assistance does not qualify as "cause" to excuse procedural default. Coleman v. Thompson, 501 U.S. 722, 752 (1991).

To show "actual prejudice" a petitioner must show not simply that the procedural default created the possibility of prejudice, but an "actual and substantial disadvantage." U.S. v. Frady, 456 U.S. 152, 170 (1982).

Alternatively, a procedural default may be excused if the petitioner can show a "fundamental miscarriage of justice" occurred because he is actually innocent of the crimes for which he was convicted. See Boyd v. Thompson, 147 F.3d 1124, 1127 (9th Cir.1998) (quoting

Report & Recommendation   7

Murray, 477 U.S. at 495-496 (1986)).

The actual innocence exception to procedural default is not a constitutional claim itself, "but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Schulp v. Delo, 513 U.S. 298, 315 (1995)(citing Herrera v. Collins, 506 U.S. 390, 404 (1993)).

In essence, a petitioner facing a procedural bar must satisfy a two-part test in order to pass through the "Schlup gateway." First, the petitioner must produce new, reliable evidence that was not presented at trial to supplement his constitutional claim with a colorable showing of factual innocence. Schlup, 513 U.S. at 324. Such evidence may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." Id.

Second, the petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327-28. In other words, a petitioner "need only present evidence of innocence strong enough 'that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Carriger v. Stewart, 132 F.3d 463, 478 (9th Cir.1997)(quoting Schlup, 513 U.S. at 316). In considering this new evidence, the court is not bound by the rules of admissibility. Id.

C.   **Federal Habeas Relief Under AEDPA**

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, habeas corpus relief may not be granted on any claim adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme

Report & Recommendation   8

Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Supreme Court precedent if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or the state court decides a case differently than the Supreme Court on a set of facts that are materially indistinguishable. Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Lockyer v. Andrade, 538 U.S. 63, 73 (2003); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Powell v. Galaza, 328 F.3d 558, 563 (9th Cir. 2003) (quoting Early v. Packer, 537 U.S. 3 (2002)).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal principle but unreasonably applies the principle to the facts of the case, or unreasonably extends, or refuses to extend, the governing legal principle. Williams, 529 U.S. at 407-09, 412; Wiggins v. Smith, 539 U.S. 510, 520 (2003); Clark, 331 F.3d at 1067. A federal habeas court may not overturn a state decision even when it concludes that the state applied clearly established federal law erroneously or incorrectly; instead, the state court's application of federal law must be "objectively unreasonable." Williams, 529 U.S. at 409-10, 412-13; Lockyer, 538 U.S. at 75, 76; Clark, 331 F.3d. at 1067-68.

In addition, any factual determinations made by the state courts are presumed to be correct, unless petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. §

Report & Recommendation   9

2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). "A state court decision 'based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding.'" Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004) (quoting Miller-El, 537 U.S. at 340).

The federal habeas court looks to the last reasoned state court decision as the basis of the state court's judgment. Franklin v. Johnson, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). When the state court does not give reasoning for its decision, the habeas court must conduct an independent review of the complete record and applicable law. Such independent review is not de novo review but is the only means for the court to determine whether the state court's decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 & n.3 (9th Cir. 2003); Greene v. Lambert, 288 F.3d 1081, 1088-89 (9th Cir. 2002).

## III. Petitioner Has Procedurally Defaulted on Three Grounds for Relief

Petitioner did not properly raise her claims on part of Ground Two, Ground Four, and Ground Five in her petition for post-conviction relief.[4] A state prisoner must fairly present her federal claims to the state court by stating the facts that entitle her to relief and referencing relevant federal law support her claims before seeking relief in federal court. See Baldwin, 541 U.S. at 32; Gray, 518 U.S. at 162-63. Petitioner must show that she first exhausted state remedies. "The state prisoner must give the state courts an opportunity to act on his claims

---

[4] Petitioner's Grounds One and Two regarding the potential witness of Mr. Willimen are intertwined. In state court, Petitioner argued that her attorney failed to present evidence of her bruising through the testimony of Mr. Willimen. "The petitioner additionally alleges that Gus Willimen . . . would have testified that the petitioner had been beaten on the night was admitted into jail for the assault of the victim." (Ex. 107, 2.) As a result, she did fairly exhaust this claim in state court although she pleads each ground separately in her federal petition.

Report & Recommendation    10

before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). When state court remedies are not properly exhausted, the claims are procedurally defaulted. Id. at 848.

In her petition for post-conviction relief, Petitioner alleged only three grounds for relief. These three grounds did not include all five of the grounds she now asserts for federal habeas relief. Specifically, she did not claim that trial counsel failed to call specific witnesses Shelli McGinnis, Beverly Johnson, and Bill Ross[5], failed to use forensic evidence at the scene, and failed to impeach Mr. Ingles with his criminal record.[6] Accordingly, these claims were not fairly presented state court and are procedurally defaulted.

## IV. Part of Ground Two and Ground Three Do Not Warrant Habeas Corpus Relief for Violation of Petitioner's Sixth Amendment Rights

Petitioner argues that the post-conviction relief court's denial of her petition is an unreasonable application of federal law. She believes she was she was denied effective assistance of counsel when her trial attorney failed to call Mr. Willeman to testify at trial about her bruises and when counsel entered a defense of mental disease or defect.

Under the AEDPA, a federal court may not grant a state prisoner's habeas application unless the relevant state court decision "was contrary to, or involved an unreasonable application

---

[5] Petitioner did claim that witness Mr. Willimen should have been called to testify about her physical condition in Ground Three of her petition for post conviction relief. However, this ground does not warrant a writ for habeas corpus as described in Section IV.B.

[6] Petitioner has two claims that related to impeaching Mr. Ingles, one raised in state court and one raised here in federal court. In Petitioner's petition for post conviction relief, she argues that her attorney should have impeached Mr. Ingles on his consumption of alcohol on the night of the incident. In her habeas petition, she argues that her attorney should have impeached Mr. Ingles on his criminal record. The state court concluded that Petitioner was not denied adequate assistance because the record showed counsel did present evidence of Mr. Ingles' alcohol consumption. Rather than appealing the decision on this ground, Petitioner attempts to assert another ground related to impeaching Mr. Ingles, but as this ground was not properly pled in state court, this court will not review it.

Report & Recommendation   11

of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). It is not a *de novo* review. Here, the relevant state court decision is the post-conviction review trial court's decision to deny Petitioner's petition.

### A.   State Court's Denial of Petitioner's Ineffective Assistance of Counsel Claim Was Not Unreasonable

Petitioner argues that the post-conviction court's decision resulted from an unreasonable application of the federal standard set forth in Strickland for ineffective assistance of counsel. (Mem. in Supp. 15.) The court disagrees.

In habeas review, "the question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.' And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 2009 WL 746274 (U.S.) at *8, 556 U.S. ___, (2009) (citing Schiro v. Landrigan, 550 U.S. 465, 473 (2007)). Under Strickland, petitioner must prove that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Both elements are necessary to meet the test. Bell v. Cone, 535 U.S. 685, 695 (2002); Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

Petitioner's claims fail for habeas relief. It was not unreasonable for the state court to conclude that her defense counsel's performance was not deficient when he chose not to call Mr. Willimen as a witness because counsel believed Deputy Kelly's testimony would be sufficient. Nor was it unreasonable for the court to determine that counsel properly obtained consent to

Report & Recommendation    12

enter Petitioner's defense after reviewing trial counsel's sworn affidavit.

### B. Petitioner Did Not Receive Ineffective Assistance of Counsel

Even if this court did review Petitioner's claims *de novo*, the claims for inadequate assistance of counsel still fail. The court agrees with the state court's application of Strickland.

#### 1. Counsel Did Not Provide Deficient Performance When He Declined to Call Mr. Willimen to Testify

Petitioner argues that when her counsel declined to call Mr. Willimen he provided deficient performance by failing to present evidence that would have supported Petitioner's version of events. (Mem. in Supp. 13.)

To establish a claim for ineffective assistance of counsel, the petitioner must show deficient performance. She must show the counsel's errors were serious and not "the result of professional judgement" and they must be "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. "Judicial scrutiny of counsel's performance must be highly deferential" and "a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Petitioner must also show prejudice, meaning that there is a "reasonable probability that but for the counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 695.

Counsel provides deficient performance when he "fails adequately to investigate, and to introduce into evidence, evidence that demonstrates his client's factual innocence, or that raises sufficient doubt as to that question to undermine confidence in the verdict." Riley v. Payne, 352

Report & Recommendation   13

F.3d 1313, 1318 (9th Cir. 2003). However, counsel still exercises his professional judgment and to make strategic decision. "[T]he decision whether to subpoena certain witnesses rests upon the sound professional judgment of the trial lawyer." Gustave v. U.S., 627 F.2d 901, 904 (9th Cir. 1980). The Oregon Supreme Court explained,

> the strategy, tactics, and manner of advocacy of the defense are for counsel to determine based upon the exercise of professional skill and judgment. The constitution gives no defendant the right to a perfect defense seldom does a lawyer walk away from a trial without thinking of something that might have been done differently or that he would have preferred to have avoided. Adequacy of assistance of counsel allows for errors which are inconsequential in the context of the entire trial or proceeding. It also allows for tactical choices that backfire, because, by their nature, trials often involve risk.

Krummacher v. Gierloff, 290 Or. 867, 875 (Or. 1981).

Petitioner argues that her counsel's decision was not strategic because Mr. Willimen would have provided more details regarding the extent of her injuries. Contrary to her counsel's opinion, Petitioner believes this testimony would not have been cumulative and would have been "more effective" than Deputy Brown's testimony. Id. at 13.

Petitioner has not, however, overcome the strong presumption that her counsel's performance falls within the "wide range of reasonable professional assistance" or that "under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (internal citations omitted). In the post-conviction relief trial, counsel's trial attorney Mr. Hollen defended his decision not to call Mr. Willimen. He believed Deputy Brown's testimony was sufficient to introduce evidence of Petitioner's physical condition and "[s]imilar testimony by Gus Willimen of his later observations would have been cumulative and less effective." (Ex., 118, Aff. of Jeffrey C. Hollen, 3.)

Report & Recommendation    14

Petitioner has not provided evidence to support the contrary. This decision was a strategic choice. Counsel exercised his professional skill and judgment, and it falls within the boundaries of adequate assistance of counsel.[7]

### 2.     Counsel Properly Entered Petitioner's Defense at Her Trial

Petitioner also argues that she received ineffective assistance of counsel when her attorney entered a defense of mental illness, allegedly, without her permission. (Second Am. Pet. 3.) However, the state court found that this assertion is factually incorrect and that Mr. Hollen did obtain her permission before entering this defense. (Ex. 123, Post-Conviction Relief Court Findings of Fact and Conclusions of Law, 3.) Accordingly, unless Petitioner can rebut this presumption, there is no cognizable claim.

To rebut the presumption that the post-conviction court's factual determinations are correct, petitioner must provide clear and convincing evidence. 28 U.S. C. § 2254(e)(1); Miller-El, 537 U.S. at 340. A state court's decision will not be overturned on factual grounds unless "objectively unreasonable in light of the evidence presented at the state-court proceedings." Davis, 384 F. 3d at 638.

Petitioner has offered no evidence to rebut the trial court's determination that she did agree to this defense. At the trial for post-conviction relief, the court heard and considered evidence on Petitioner's claims, including an affidavit from her trial attorney describing how he obtained her authorization for this defense. "Petitioner told me that she would rather face time in the Oregon State Hospital than at the penitentiary, and agreed that I could assert an insanity

---

[7] Because the Petitioner has not met the first element of the Strickland, the court declines to address whether Petitioner has met the second element, that the unprofessional errors identified in the first element prejudiced the proceedings. As the court noted, in Bell, "[w]ithout proof of both deficient performance and prejudice to the defense . . . the sentence or conviction should stand." 535 U.S. at 695.

Report & Recommendation   15

defense." (Ex. 118, 2.) The court's findings of fact and conclusions of law state, "Petitioner's allegation that she never authorized counsel to present an insanity defense at trial is factually incorrect." (Ex. 123, 3.)

Petitioner offers no evidence to contradict Mr. Hollen's statements, and she cannot seek relief on this ground. She has offered no evidence to rebut the trial court's factual determination, and there is nothing in the record to suggest that this determination was objectively unreasonable to the evidence presented at the state court proceeding.

### IV.   Conclusion

Three of Petitioner's grounds for relief are all procedurally defaulted because they were not fairly presented to the state court. Further Petitioner has not shown that the state court applied an unreasonable application of the law when it denied her post-conviction relief for ineffective assistance of counsel on the two remaining grounds for relief. The court reasonably applied the law when it determined that counsel's failure to call Mr. Willimen as a witness did not violate her Sixth Amendment right and that she did agree to offer a defense of mental defect.

### V.   Recommendation

The court recommends that Petitioner's petition for writ of habeas corpus be denied.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by April 16, 2009 If objections are filed, any responses to the objections are due within 10 days, see* Federal Rules of Civil Procedure 72 and 6. Failure to timely file objections to any factual determinations of the

Report & Recommendation   16

Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 30 day of March, 2009.

MARK D. CLARKE
United States Magistrate Judge

Report & Recommendation    17